FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 10, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SHARMA C.,[1]

                    Plaintiff,

          v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                    Defendant.

No.    4:19-CV-5225-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

        Before the Court are the parties' cross summary-judgment motions.[2]

Plaintiff Sharma C. appeals the denial of benefits by the Administrative Law

Judge (ALJ). She alleges the ALJ erred by 1) denying benefits at step one because

Plaintiff participated in substantial gainful activity; 2) improperly weighing the

medical opinions; 3) improperly determining that the impairments did not meet or

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by

first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 11 & 12.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

equal a listing; 4) discounting Plaintiff's symptom reports; 5) discounting lay statements; and 6) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 11, and grants the Commissioner's Motion for Summary Judgment, ECF No. 12.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title II application, alleging a disability onset date of June 15, 2014.[18] Her claim was denied initially and upon reconsideration.[19] Video administrative hearings were held before Administrative Law Judge Caroline Siderius on March 13, 2018, and August 27, 2018.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

---

[14] 20 C.F.R. § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 242-50.

[19] AR 114-17 & 119-21.

[20] AR 39-96.

- Step one: Plaintiff had engaged in substantial gainful activity between June 15, 2014 (the alleged onset date), and September 30, 2021 (the date last insured);

- Step two: Plaintiff had the following medically determinable severe impairments: fibromyalgia; migraine headaches; obesity; depression; irritable bowel syndrome; and vertigo;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work except:

    [she] would need the ability to alternate between sitting and standing at least once an hour. She should never climb ladders, ropes, or scaffolds but could occasionally balance, crawl, crouch, kneel, and stoop. She should avoid unprotected heights or the operation of heavy machinery or equipment. She should avoid loud noises (e.g. anything above ordinary office noise levels) and avoid anything above ordinary office level lighting. She would be limited to the performance of simple, routine, and repetitive tasks with occasional detailed work.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as document preparer, addresser, and photocopy machine operator.[21]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the examining opinions of James Opara, M.D., and Troy Bruner, Ed.D.; and

- little weight to the examining opinions of Stephen Fair, Ph.D., and Ernest Griffith, M.D.[22]

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the objective medical evidence, improvement with treatment, and her noncompliance with recommended treatment.[23] Likewise, the ALJ discounted the lay statements from Plaintiff's friend.[24]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

---

[21] AR 13-33.

[22] AR 26-27.

[23] AR 23-26.

[24] AR 27.

[25] AR 1-3.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

---

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

## IV.    Analysis

### A.    Step One (Gainful Employment): Plaintiff fails to establish harm.

Plaintiff alleges the ALJ erred by denying her disability claim on the grounds that she engaged in substantial gainful activity (SGA) within twelve months of her alleged onset date.

At step one of the sequential evaluation process, the ALJ considers the claimant's work activity.[34] If the claimant is engaged in SGA, the ALJ must find that the claimant is not disabled. SGA is work activity that "involves doing significant physical or mental activities" on a full-time or part-time basis and "is the kind of work usually done for pay or profit."[35]

Plaintiff concedes the record reflects SGA levels of earnings in 2015, but maintains that the record establishes she did not engage in SGA from January 1,

---

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[34] 20 C.F.R. § 404.1520(a)(4)(i).

[35] 20 C.F.R. § 404.1572.

2016 through the date of the ALJ's September 2018 decision.[36] Thus, Plaintiff argues the ALJ failed to consider January 1, 2016, as an amended disability onset date and that Plaintiff met the twelve-month disability durational requirement given her date last insured of September 30, 2021.

Even though the ALJ denied Plaintiff's claim for benefits at step one because Plaintiff engaged in SGA within twelve months of her alleged disability onset date of June 15, 2014, the ALJ continued with the sequential evaluation process and made alternative findings at steps two through five. Ultimately, the ALJ crafted an RFC that was presented to the vocational expert, who testified that there were three jobs that Plaintiff could perform with that RFC. Accordingly, even assuming the ALJ erred at step one, Plaintiff fails to establish consequential error resulting from this error.

## B.    Medical Opinions: Plaintiff fails to establish error.

Dr. James Opara conducted a consultative physical examination of Plaintiff in April 2018 and reviewed medical progress notes.[37] Dr. Opara diagnosed Plaintiff with fibromyalgia, irritable bowel syndrome, migraine headaches, polycystic ovarian syndrome, and vertigo.[38] Dr. Opara opined that Plaintiff had no limits (with normal work breaks) with standing, walking, sitting, lifting, carrying,

---

[36] ECF No. 11 at 11.

[37] AR 687-98.

[38] AR 690.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

postural and manipulative activities, and environmental exposures but that she

should not work at heights or with heavy machineries.[39]

The ALJ assigned great weight to Dr. Opara's opinion because it is

consistent with the objective examination.[40] However, the ALJ also found that the

longitudinal record supports greater physical limitations than those opined by Dr.

Opara. Plaintiff challenges the ALJ's assignment of great weight to Dr. Opara's

opinion because 1) Dr. Opara mischaracterized Plaintiff's primary impairments of

fibromyalgia and migraine headaches, 2) his opinion is inconsistent with the

records that he reviewed, and 3) his opinion is internally inconsistent.

The weighing of medical-source opinions is dependent upon the nature of the

medical relationship, i.e., 1) a treating physician; 2) an examining physician who

examines but did not treat the claimant; and 3) a reviewing physician who neither

treated nor examined the claimant.[41] Generally, more weight is given to the

opinion of an examining physician than to the opinion of a reviewing physician.[42]

When an evaluating physician's opinion is not contradicted by another physician, it

may be rejected only for "clear and convincing" reasons, and when it is

contradicted, it may be rejected only for "specific and legitimate reasons" supported

---

[39] AR 690-91.

[40] AR 26.

[41] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[42] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

by substantial evidence.[43] Similarly, an ALJ must set forth specific, legitimate reasons for crediting one medical opinion over a conflicting opinion.[44]

Plaintiff fails to establish that the ALJ's weighing of Dr. Opara's contested opinion was erroneous. First, Plaintiff fails to establish that Dr. Opara mischaracterized Plaintiff's fibromyalgia and migraines by finding that her prognosis for both was good. Dr. Opara considered Plaintiff's reported symptoms during the examination, his observations and findings during the examination, and the reviewed medical records. While Plaintiff may disagree with Dr. Opara's finding that Plaintiff's prognosis for her fibromyalgia and migraines was good, the ALJ reasonably found Dr. Opara's finding is largely supported by the fairly benign examination, Plaintiff's improvement when she took her medication consistently, and the anticipated improvement with non-narcotic medication and low-impact exercise.

Second, notwithstanding that there is ambiguity as to what records Dr. Opara reviewed,[45] Plaintiff fails to establish that Dr. Opara's opinion is

---

[43] *Lester*, 81 F.3d at 830.

[44] *Garrison*, 759 F.3d at 1012-13; *Lester*, 81 F.3d at 831.

[45] For future cases involving a consultative examination, the Court encourages the ALJ (or Commissioner) to direct the consultative examiner to attach the reviewed records to the examiner's report. Such a practice will help develop clear administrative records.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 11

inconsistent with the medical records. Dr. Opara indicated he "reviewed progress notes. I also reviewed her progress notes from Prios Health dictated 08/17/17 [and] 9/21/2017 from Kadle Health Care."[46] As Plaintiff highlights, the record does not contain notes from "Prios Health dictated 08/17/17." However, the record contains notes from Trios Health printed on August 12, 2017, relating to an August 11, 2017 visit, and from Kadlec created on September 21, 2017.[47] Regardless of which Prios/Trios Health notes Dr. Opara intended to cite, the Trios notes are reasonably consistent with Dr. Opara's opinion. The August 11, 2017 notes memorialize that Plaintiff had multiple visits in the past month for migraines, that she had a suicide attempt in April 2017, and that she reported having at least two migraines a month. She was observed in no apparent distress, as cooperative, and exhibiting normal behavior. The physician noted, "[s]trength +4/5 [left upper extremity and left lower extremity] however when I distract the patient I see her move these limbs spontaneously and when I raised her arm she kept it from hitting the side rail which was inconsistent with her strength examination,"[48] and "[h]er symptoms may be related to hemiplegic migraine. I also suspect there may be a factitious component given her exam findings which were inconsistent on serial

---

[46] AR 687.

[47] AR 518-27 & 586-92.

[48] AR 524.

examinations. She may benefit from discussion for a daily prophylactic treatment for migraines with her PCP Trudy Sharp who she will follow up with in 1 week."[49]

The September 21, 2017 notes reflect that Plaintiff appeared distressed with diffuse soft tissue tenderness, with normal muscle tone, coordination, behavior, judgment, and thought control, and with a flat affect and mildly depressed mood.[50] The treating emergency room physician discussed with Plaintiff that high-dose or long-term narcotics were not an option to treat fibromyalgia, but instead encouraged Plaintiff to work with her primary care physician to have a thorough endocrine workup and to start on Lyrica.

These notes are reasonably consistent with the ALJ's decision to give great weight to Dr. Opara's opinion, while also adding additional limitations to the RFC because the ALJ found the longitudinal record supports greater limitations than those opined by Dr. Opara. The record contains conflicting medical observations and opinions, and it was the ALJ's role to weigh these conflicts.[51] The ALJ's weighing of the medical evidence as to Plaintiff's fibromyalgia, migraines, and other conditions is reasonable and supported by substantial evidence.

---

[49] AR 518.

[50] AR 587-88.

[51] *See Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ is to consider the consistency of the medical opinion with the record as a whole); *Molina*, 674 F.3d at 1111 (recognizing the ALJ weighs the conflicting evidence).

Finally, although Dr. Opara's notation that Plaintiff was unlimited in her ability to sit, stand, and walk for an eight-hour workday with normal breaks appears at odds with Dr. Opara's check-box opinion that Plaintiff could sit for two hours, stand for three hours, and walk for three hours, no error arises from this "inconsistency." Even if the ALJ adopted Dr. Opara's more limiting restrictions, these restrictions are consistent with the ALJ's light-work RFC.  Moreover, the ALJ incorporated additional restrictions than those opined by Dr. Opara into the RFC, such as the alternating between sitting and standing every hour, occasional balancing, crawling, crouching, kneeling, and stooping, and avoiding loud noises and anything above ordinary office level lighting.[52]

Plaintiff fails to establish that the ALJ erred when weighing Dr. Opara's medical opinion.

## C.    Step Three (Listings): Plaintiff fails to establish error.

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet or medically equal Listing 14.09D (fibromyalgia) and Listing 11.02 (migraine headaches), singly or in combination, and by failing to adequately develop the record.

Because fibromyalgia is not a listed impairment, the ALJ looks to Listing 14.09D (inflammatory arthritis). Listing 14.09D[53] requires:

---

[52] AR 21.

[53] 20 C.F.R. Part 404, Subpart P, App. 1, Section 14.09D.

Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at a marked level:

1. Limitation of activities of daily living.
2. Limitation in maintaining social functioning.
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 11.02 is the most closely analogous listing for migraines.[54] Listing 11.02 requires that migraine headaches be "documented by detailed description of a typical [migraine headache]."[55] To be of equal severity and duration, Listing 11.02B requires the migraines occur at least once a week for at least three consecutive months, despite compliance with treatment.[56] Listing 11.02D requires the migraines occur at least once every two weeks for at least three consecutive months, despite adherence to prescribed treatment, and the claimant must have a marked limitation in physical functioning or one of the four areas of mental functioning.[57]

The ALJ found "the evidence does not show [Plaintiff's] fibromyalgia was of a severity to meet or equal this [L]isting or any other listed impairment" and that Plaintiff's "migraines do not meet [L]isting 11.02 or 11.14, and no acceptable

---

[54] HALLEX DI 24505.015(B)(7)(B) (example 2).

[55] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02.

[56] *Id.*

[57] *Id.*

medical sources opined the listing was medically equaled."[58] As Plaintiff highlights, the ALJ's listings findings are brief. However, the ALJ's discussion and analysis about the medical evidence concerning Plaintiff's fibromyalgia and migraines in subsequent sections of the decision permits the Court to meaningfully review the ALJ's listings finding.[59]

As to Plaintiff's fibromyalgia, the ALJ meaningfully explained why Plaintiff did not have a marked limitation in her activities of daily living (which the ALJ found to be mildly limited), social functioning (which the ALJ found to be mildly limited), and completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace (which the ALJ found to be moderately impaired). The ALJ's findings in these regards are rational and supported by substantial evidence.

As to Plaintiff's migraines, the ALJ found that Plaintiff had not followed treatment recommendations, which contributed to her symptom exacerbation.

---

[58] AR 20.

[59] SSR 17-2p ("Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Therefore, notwithstanding that a 2016 MRI of Plaintiff's brain showed a nonspecific white matter lesion of the left frontal subcortical white matter,[60] which a provider opined may be associated with her migraines, the ALJ's finding that Plaintiff's migraines—and their related symptoms—would be reduced if she complied with treatment is supported by substantial evidence.

Accordingly, the ALJ's findings and analysis in the other sections of the decision permit the Court to meaningfully review the ALJ's listings denials—denials that are supported by substantial evidence. Moreover, the ALJ took steps to develop the record about Plaintiff's impairments by ordering both physical and psychological consultative examinations before issuing the final opinion.[61]

Plaintiff fails to establish that the ALJ's listing finding is not supported by substantial evidence or is based on legal error.

**D.   Plaintiff's Symptom Reports: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[62] Second, "[i]f the claimant meets

---

[60] AR 385-85.

[61] AR 679-86 & 687-99.

[62] *Molina*, 674 F.3d at 1112.

the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[63] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence, improvement with treatment, and failure to participate in other recommended treatment.[64]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence, which entails signs, laboratory findings, or both.[65] However,

---

[63] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[64] AR 23-26.

[65] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 404.1502(f). "Signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

objective medical evidence is a relevant factor in considering the severity of the reported symptoms.[66] Here, the ALJ summarized the medical records, highlighting that the examinations and imaging reflected generally normal strength, range of movement, and lack of observed pain or distress, albeit tenderness to palpation of the neck and back were often observed and a MRI revealed a single small nonspecific white matter lesion of the left frontal subcortical white matter.[67] Based

---

*Id.* § 404.1502(g). Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence. 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[66] *Id.*

[67] *See, e.g.*, AR 381 (No acute distress and normal range of motion of neck); AR 391 ("Alert, no acute distress. . . Nontender [back]"); AR 403 ("No acute distress"); AR 423 ("No distress alert quite stable. Head and neck exam unremarkable cranial nerve exam is normal no pain to palpate over the scalp. Range of motion in the shoulder neck and arms"); AR 634 (noting no acute distress and normal range of motion and palpation of neck); AR 513 (noting mild distress with normal, nontender range of movement of extremities); AR 550 (noting no apparent distress, normal gait, grossly positive fibromyalgia tender points in various soft tissue locations with diffuse muscle aches present, full extremity strength, positive

on the medical record, the ALJ's finding that Plaintiff's reported severe symptoms of pain, fatigue, and dizziness resulting from her fibromyalgia and migraines are inconsistent with the medical evidence is rational and supported by substantial evidence.

Second, the ALJ's finding that Plaintiff's reported symptoms are inconsistent with her improvement with treatment is rational and supported by substantial evidence.[68] As to Plaintiff's physical symptoms, she had slow and steady improvement with her pain and ability to engage in activities of daily living after two months of consistent physical therapy.[69] Thereafter, Plaintiff's attendance at physical therapy lessened and she reported increased symptoms, particularly headaches.[70] When Plaintiff consistently took medication, her headaches improved

---

Romberg test); AR 555 (noting no apparent distress; normal range of movement in lumbar and cervical planes notwithstanding tenderness to palpation, and full extremity strength); AR 667 ("affect somewhat restricted" but engaged throughout counseling session); AR 687-98 (showing normal gait, full grip strength, full motor strength, full range of motion, and normal neurological exam); & AR 708 (normal CT of head/brain).

[68] *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

[69] AR 467-75.

[70] AR 476-81.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

and her mental-health stabilized.[71] Although Plaintiff's mental health deteriorated and she attempted suicide in April 2017, Plaintiff had not been taking the prescribed Zoloft for the preceding month.[72] On this record, the ALJ's finding that Plaintiff's symptoms improved with treatment is supported by substantial evidence. This is a clear and convincing reason to discount Plaintiff's reported disabling symptoms.[73]

Finally, the ALJ discounted Plaintiff's reported disabling symptoms because she failed to comply with treatment.[74] Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.[75] Here, the ALJ rationally found that Plaintiff failed to meaningfully engage in mental health

---

[71] *See* AR 391 ("Uncomplicated headache without neurologic deficit[.] Symptoms improved with treatment."); AR 504-07 (noting that Plaintiff's headache improved with medication); AR 574 & 763 (reporting that Lyrica helped with symptoms); & AR 679 (reporting that she felt stable on her mental-health medications).

[72] AR 454.

[73] *See Morgan*, 169 F.3d at 599–600 (9th Cir. 1999) (considering evidence of improvement).

[74] AR. 25-26.

[75] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

counseling.[76] Plaintiff submits her medical conditions prevented her from attending counseling appointments. Yet, the record rationally supports the ALJ's decision that Plaintiff willfully chose not to comply with this treatment recommendation. For instance, Plaintiff elected to "continue counseling at some point in the future."[77] In addition, Plaintiff canceled her July 25, 2017 counseling appointment because she reportedly was in the emergency room the night before.[78] However, there are no emergency-room records indicating such a visit. Instead the medical records reflect that Plaintiff attended 1) a medical appointment with Trudy Sharp, ARNP on July 24, 2017, during which Plaintiff had a normal gait, moved all extremities, had a blunted affect, normal thought process and judgment, intact recent memory, good attention span, and depressed mood[79]; 2) a laboratory specimen collection on July 25, 2017[80]; and 3) a chiropractic appointment on July 25, 2017.[81] There is no indication in these records that Plaintiff needed to visit or did visit the emergency room on July 24, 2017, or that she suffered a disabling headache on July 24 or 25, 2017, that would prevent her from being able to

---

[76] *See, e.g.,* AR 669-70, 673, & 678.

[77] AR 673.

[78] AR 669.

[79] AR 655-56.

[80] AR 657-58.

[81] AR 464-65.

participate in her counseling session. There is substantial evidence to support the ALJ's finding that Plaintiff declined to engage in counseling.

As the ALJ discussed, the record also indicates that Plaintiff ceased taking medication as prescribed without first discussing such cessation with her medical providers.[82] In addition, Plaintiff's treating provider recommended to Plaintiff "that the best therapy for fibromyalgia to date is consistent and low-impact aerobic activity."[83] However, other than taking her dogs out to go the bathroom, Plaintiff told her therapist that her only exercise was physical therapy one time a week,[84] and the record reveals that she attended physical therapy about twice per week from July 25, 2017, to September 27, 2017, and then once a month from October to December 2017.[85]  Without more regular consistent, low-impact aerobic activity, Plaintiff fails to establish that the ALJ erred by discounting her symptoms for failing to comply with her providers' treatment recommendation for her fibromyalgia. Plaintiff's argument that her impairments and financial burden prevented her from participating in the recommended consistent, low-impact activity is not supported by the record, as there is no evidence that Plaintiff was

---

[82] AR 549, 758, & 760.

[83] AR 551 & 556.

[84] AR 675.

[85] AR 464-81.

required to expend money to engage in the strengthening and stretches recommended by her providers.[86]

In summary, Plaintiff fails to establish the ALJ erred by discounting Plaintiff's symptom reports.

**E.    Lay Witness: Plaintiff fails to establish error.**

The ALJ discounted Plaintiff's friend's statements because they essentially mirrored Plaintiff's reported symptoms, which were not fully consistent with the objective medical evidence.[87] As explained above, the ALJ's finding that Plaintiff's reported disabling symptoms are not consistent with the objective medical evidence is supported by substantial evidence. This likewise serves as a germane reason to discount the friend's statements.[88] Plaintiff fails to establish err by the ALJ in this regard.

**F.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues the ALJ erred at step five because the vocational expert's testimony was based on an incomplete hypothetical that failed to include the opined absenteeism and unproductivity. Plaintiff's argument is based on her initial arguments that the ALJ erred in considering the evidence. For the above-explained reasons, the ALJ's consideration of the medical-opinion evidence and Plaintiff's and

---

[86] AR 467-81 & 549-56.

[87] AR 27.

[88] *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

the friend's symptom reports are legally sufficient and supported by substantial evidence. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing other work existing in the national economy.[89]

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 10th  day of June 2020.

_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge

---

[89] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).